UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Charles Bennett Crome<br>and<br>Marissa Cervana Crome,<br>  Debtors. | Bankruptcy No. 08-15222<br>Chapter 7<br>Judge Manuel Barbosa |

### MEMORANDUM OPINION

This matter comes before the Court on the motion for sanctions filed by pro se debtors Charles Bennett Crome and Marissa Cervana Crome ("Debtors"), pursuant to 11 U.S.C. §§ 362(a)(6), (k), on July 25, 2008. For the reasons set forth herein, the Court denies Debtors' motion for sanctions.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### FACTS AND BACKGROUND

This matter involves Debtors' motion for sanctions, pursuant to 11 U.S.C. §§ 362(a)(6), (k), against their gas service provider, Nicor, Inc. ("Nicor"), for denial of residential gas service after Debtors' Chapter 7 bankruptcy filing. Prior to filing bankruptcy, Debtors received residential gas service from Nicor.

On May 8, 2008 at 7:47 p.m., Nicor arrived at Debtors' residence and attempted to disconnect gas service because Debtors had an outstanding balance of $1565.68, including $1164.56 related to utility residential heat, and Debtors' last payment of $220 was received on

1 of 7

July 9, 2007. Generally, when Nicor disconnects service, it places a device on the meter to lock the gas valve to prevent further gas from flowing through the meter. Nicor, however, could not lock the gas valve to disconnect service because, according to Nicor, Debtors had installed a padlock that locked the meter in the "on" position. Nicor proceeded to cut the padlock and install its own locking device to cut service.

On June 7, 2008 at 7:06 p.m., Nicor again visited Debtors' residence and found that someone had tampered with the gas meter, cut one half of Nicor's lockwing, and installed a another padlock on the meter. Thus, Nicor determined that the gas needed to be cut off at the main because someone had tampered with the service valve to obtain gas service.

On June 13, 2008, Debtors filed a voluntary Chapter 7 bankruptcy petition. Debtors' primary residence is 224 South Street, Burlington, Illinois. Debtors listed Nicor twice as an unsecured creditor on schedule F in the amount of $2815 for 2005-08 utility service and $1566 for agriculture.

In early July 2008, Nicor reviewed Debtor's gas service and confirmed that someone had tampered with the gas service to obtain gas service. Accordingly, during this timeframe, Nicor removed the gas meter and cut service to the main.

In mid-July 2008, Debtors called Nicor to restore service, but Nicor indicated that Debtors needed to pay more than $1900 to restore their gas service. On July 25, 2008, Debtors filed a motion for sanctions, pursuant to 11 U.S.C. §§ 362(a)(6), (k), against Nicor for denial of residential gas service after Debtors filed a Chapter 7 bankruptcy petition. The Court entered a discharge order on September 8, 2008. On September 24, 2008, Nicor filed a response to Debtors' motion for sanctions and asserted that Nicor did not violate § 366 and, instead, properly discontinued gas service and refused to reinstate service because Debtors illegally tampered with

the gas meter. In an order dated October 23, 2008, the Court granted Debtors' counsel's motion to withdraw as counsel. The trial on the alleged tampering issue was continued and held on November 7, 2008.

In the hearing held November 7, 2008, Debtor Charles Crome and Nicor employees, Barbara Williams and John Aug, testified. Debtor denied tampering with the gas meter. Debtor indicated that his son-in-law was a former Nicor employee. In addition, Debtor alleged that Nicor never visited his house to review the gas meter in either May or June 2008. According to Debtor, Nicor did not cut service until July 11, 2008, post-petition. Debtor further alleged that Nicor damaged his parking apron when it cut the main. Nicor employees, John Aug, who testified to visiting Debtors' residence on May and June 2008, and Barbara Williams, both testified that Nicor visited Debtors' residence in May and June 2008 and became aware that someone tampered with the meter. The Nicor employees further testified that someone installed a padlock on the meter to continue service, but, in May 2008, Nicor employee John Aug cut this padlock and installed a Nicor lock to cut off service. When the same situation occurred again in June 2008, prepetition, Nicor determined that the service needed to be shutoff at the main, which eventually occurred in early July 2008, postpetition.

## DISCUSSION

The issue is whether a utility service provider violated §§ 362 and 366 when it attempted to discontinue gas service prepetition, became aware that someone repeatedly tampered with the gas meter to reinstate service to debtors, and then discontinued gas service post-petition and refused to reinstate service post-petition without debt re-payment.

Section 362(a) of the Bankruptcy Code provides:

[A] petition filed . . . operates as a stay . . . of –

> (1) the commencement or continuation . . . of a[n] . . . action . . . against the debtor that . . . could have been commenced before the commencement of the case . . . , or to recover a claim against the debtor that arose before the commencement of the case;
>
> . . . .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

[11 U.S.C. § 362(a)(1), (6).]

The legislative history of 11 U.S.C. § 362(a)(1) provides that "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." H.R. Rep. No. 595, at 174-75 (1977). Moreover, the legislative history of 11 U.S.C. § 362(a)(6) provides that "[p]aragraph (6) prevents creditors from attempting in any way to collect a prepetition debt." H.R. Rep. No. 595, at 342 (1977); S. Rep. No. 989, at 50-51 (1978). Furthermore, this provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors. H.R. Rep. No. 595, at 342 (1977); S. Rep. No. 989, at 50-51 (1978); see, e.g., In re Tarrant, 190 B.R. 704, 708 (Bankr. S.D. Ga. 1995) (utility's demand for payment of prepetition debt as a condition to restoring service is a violation of section 362(a)(6)); In re Lanford, 10 B.R. 129, 131 (Bankr. D. Minn. 1981) (utility's demand for payment of prepetition debt as a condition to restoring service is a violation of section 362(a)(6)).

Accordingly, Debtor filed a motion for sanctions against Nicor under § 362. Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1); see also In re Sumpter, 171 B.R. 835, 843 (Bankr. N.D. Ill. 1994). When a creditor engages in conduct that violates the

automatic stay, with knowledge that a bankruptcy petition had been filed, it can be considered a willful violation of the stay subjecting the creditor to liability for damages under section 362(k). In re Sumpter, supra, 171 B.R. at 843 (citing In re Roete, 936 F.2d 963, 965 (7th Cir. 1991)). Furthermore, a violation is willful even if the creditor believed himself justified in taking the actions found violative of the stay. Ibid. (citations omitted).

Debtor's basis for Nicor's allegedly willful violation of stay is presumably under 11 U.S.C. § 366 which provides, in pertinent part:

> [A] utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

See also In re Brooks, Nos. 95-81556, 95-82425, 95-81388, 2002 WL 31760206, at *4 (Bankr. C.D. Ill. Dec. 10, 2002).

No one disputes that a utility may refuse service to a debtor if the utility is able to prove that tampering or unauthorized utility usage occurred. Compare In re Webb, 38 B.R. 541, 544 (Bankr. E.D. Pa. 1984) (court allowed utility to refuse service because debtor was directly responsible for tampering with utility equipment and gas theft), with In re Broadnax, 37 B.R. 909, 911-12 (Bankr. E.D. Pa. 1984) (court ordered utility to restore debtor's gas service due to lack of evidence that debtor was engaged in the illegal activity or authorized it). Moreover, some courts have even interpreted section 366 and held that a utility may condition the restoration of service on the payment of a prepetition debt stemming from tampering or unauthorized use. See Memphis Light, Gas & Water Div. v. Farley, 135 B.R. 292, 294 (W.D. Tenn. 1991) (debtor had arranged for neighbor to illegally connect her utility services after they had been disconnected for nonpayment); Hendrickson v. Phila. Gas Works, 672 F. Supp. 823, 834 (E.D. Pa. 1987)

(someone without utility's permission or knowledge had restored gas service and tampered with meter so that usage could not be recorded); In re Morris, 66 B.R. 28, 29 (E.D. Mich. 1986) (electric meter had been illegally by-passed); In re Webb, supra, 38 B.R. at 544 (gas service had been illegally turned back on twice); In re Scearce, No. 05-11059, 2005 WL 4030139, at *2 (Bankr. S.D. Ohio Aug. 15, 2005) (electric service had been illegally reconnected by tampering with utility equipment); In re Broadnax, supra, 37 B.R. at 911-12 (after gas service was shut off for nonpayment, stolen gas meter was installed at debtor's home allowing occupants to receive stolen gas undetected by gas company; however, absent evidence that debtor, who was living in another city at the time, was engaged in the illegal activity or authorized it, court ordered utility to restore debtor's gas service). The rationale behind these decisions is based not only on economic factors but also on the safety factors involved and the risks posed to the public by those who tamper with utility equipment. In re Scearce, supra, No. 05-11059, 2005 WL 4030139, at *2 (citing In re Webb, supra, 38 B.R. at 544).

Here, Nicor did not violate §§ 362, 366 because it properly discontinued gas service and refused to reinstate service when Debtors, or someone on their behalf, illegally tampered with the gas meter. Nicor attempted to discontinue gas service prepetition in May 2008, but, when it attempted to discontinue service at Debtors' gas meter, it became aware that someone tampered with the gas meter to reinstate service to debtors. Despite this individual's attempt to continue service, Nicor cut the individual's padlock and discontinued gas service by installing its own lock on the meter. In early June 2008, prepetition, Nicor became aware that someone had again tampered with the gas meter to reinstate service to debtors, and Nicor determined that the meter would need to be removed and the service cut off at the main. Debtors filed for bankruptcy on June 11, 2008. Nicor then discontinued gas service post-petition in early July 2008 and refused

to reinstate service post-petition without payment. Debtors dispute that they engaged in illegal tampering. Whether or not Debtors engaged in the illegal activity or authorized the tampering with the gas meter, Debtors did benefit from gas services without payment. Moreover, it would be a rare instance where anyone would openly admit to a criminal act. In addition, safety concerns to the public existed due to the tampered gas meter that required Nicor to cut the service at the main. Therefore, the Court denies Debtors' motion for sanctions.

## CONCLUSION

For the foregoing reasons, the Court denies Debtors' motion for sanctions.

THEREFORE, IT IS ORDERED that the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DEC 23 2008

DATE: ~~December 18, 2008~~

Manuel Barbosa
United States Bankruptcy Judge